UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD M. SILVER, | ) | Case No. 1:06 CV 3107 |
| | ) | |
| Plaintiff, | ) | Judge Peter C. Economus |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| BRUCE DANDREW, | ) | (Regarding ECF #5) |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Plaintiff Richard Silver filed a complaint *pro se* in the Northern District of Ohio asserting the claims of breach of contract, breach of implied contract, unjust enrichment, promissory estoppel, fraud and breach of fiduciary duty against defendant Bruce Dandrew. Jurisdiction was premised on diversity. Mr. Silver alleges that he owned a prestigious restored Porsche race car and defendant Bruce Dandrew was an amateur race car driver. Mr. Silver claims that he agreed to loan his race car to Mr. Dandrew with promises to restore the car after completion of six club events. Mr. Silver also claims he gave Mr. Dandrew $25,000 toward the vehicle's restoration costs and spare parts. It is further alleged that Mr. Dandrew had the car modified but promised it would be restored to its original status without modifications. After the sixth race Mr. Dandrew allegedly returned the vehicle to a Cleveland area Porsche dealer in wrecked condition but the modifications had been removed and the spare parts were not returned.

Significantly in paragraphs 20-21, 31-32 and 35 of the complaint Mr. Silver refers to a $50,000.00 payment from Mr. Dandrew stating that Dandrew wrote a check in that amount to offset the loss and towards repairs necessary for the race car. He refers to a preceding lawsuit specifically

1:06 CV 3107                                                     2

Case No. 03-497502 in the Cuyahoga County Common Pleas Court claiming there was absolutely no evidence of any loan documents or anything that Mr. Dandrew could produce to represent that he had loaned money to Mr. Silver.  However Mr. Silver states that the state trial court and appellate courts would not consider any of the evidence in the counterclaim and would not adjust for offsets and ignored the entire race car agreement.

*Motion to Dismiss:*

Mr. Dandrew moved to dismiss under the *Rooker-Feldman* doctrine or alternatively under the doctrine of *res judicata* for failure to state a claim upon which relief can be granted (ECF #5). Mr. Dandrew claimed without supporting documentation that this lawsuit was originally filed by Mr. Dandrew against Mr. Silver in the Cuyahoga County, Ohio Court of Common Pleas in the same case number identified by Mr. Silver, had gone to trial on February 15, 2005, and that Mr. Dandrew obtained judgment in the amount of $50,000.00 plus interest against Mr. Silver.  This coincides with the statement in the *pro se* complaint, "The case was fatal to Silver and he was charged the loan amount plus 10% interest and fees" (Complaint, ¶¶32, 35).

Mr. Silver opposed the motion to dismiss reciting again his allegations in the complaint with disparaging remarks about Mr. Dandrew's counsel, the firm of Weltman, Weinberg & Reis Co., L.P.A..  Particularly with respect to the *Rooker-Feldman* doctrine, Mr. Silver claims that he is not attempting to appeal the state court decision but seeking to recover losses for the breach of contract concerning the race car.  Mr. Silver argues that Mr. Dandrew had brought a lawsuit claiming a loan,

1:06 CV 3107                                                                  3

whereas, Mr. Silver is claiming personal losses for Mr. Dandrew destroying his race car and squandering Mr. Silver's $25,000.00 payment and losing $200,000.00 in spare parts.

Mr. Dandrew replied (ECF #7) but again there was no supporting documentation. Consequently, this matter was set for evidentiary hearing in order to obtain the pleadings from the preceding state court case (ECF #8).

Under the *Rooker-Feldman* doctrine the district court is deprived of jurisdiction and consequently the motion to dismiss should be reviewed under Rule 12(b)(1) concerning this court's subject matter jurisdiction, not Rule 12(b)(6) for failure to state a claim on which relief can be granted. See *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006). "A rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be construed as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004), *cert. denied*, 544 U.S. 961 (2005); *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007).  As explained in adopting the approach from the Third Circuit in *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 890 (3rd Cir. 1977), the Sixth Circuit explained that Rule 12(b)(1) motions are segregated into those that attack the complaint on its face and those that attack the existence of subject matter jurisdiction.  In instances of facial attack, similar safeguards exist as would be under the case of Rule 12(b)(6). See *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  However, where the issue is the trial court's jurisdiction, "there is substantial authority that the trial court is free to

1:06 CV 3107                                                4

weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *RMI Titanium Co.* at 1134, quoting *Mortensen*, 549 F.2d at 891.

      Mr. Dandrew's arguments based on *res judicata* are adjudicated, however, under Rule 12(b)(6).  See *Apseloff v. Family Dollar Stores, Inc.*, 2007 WL 1654397 (6th Cir. 2007).  Under this standard the court may only dismiss the complaint if it is clear that no relief could be granted under any of facts that could be proved consistent with the allegations.  *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).  Resolution of any preclusive effect to be given to a state court judgment is procedurally incorrect when the *Rooker-Feldman* doctrine applies because the federal court lacks subject matter jurisdiction over the case. See *Tropf v. Fidelity Nat. Title Ins. Co.*, 289 F.3d 929, 938 (6th Cir. 2002). However, for the sake of completeness this alternative argument will be addressed.

*Rooker-Feldman:*

      Turning now to specific jurisdictional issue, the *Rooker-Feldman* doctrine arose from Supreme Court decisions which found a lack of subject matter jurisdiction in the federal courts when the plaintiff's request amounted to essentially an exercise of appellate review over a state court judgment.  See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *McCormick v. Braverman*, 451 F.3d at 389.  Previously

1:06 CV 3107                                             5

a *Rooker-Feldman* doctrine claim was approached from the standpoint of whether the federal case was "inextricably intertwined" with the state case." See *Executive Art Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004); *McCormick*, 451 F.3d at 391. However the Supreme Court recognized there was inconsistency in the application of this approach in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), and ruled in favor of a more direct approach that "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that the state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under the principles of preclusion.'" *McCormick*, 451 F.3d at 392, quoting *Exxon Mobil Corp.*, 544 U.S. at 293, 125 S.Ct. at 1527.

The question no longer is resolved under intertwinement analysis, but on whether there is an independent federal claim presented. As illustrated in *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 436-37 (6th Cir. 2006), *cert. denied* - U.S. - 127 S.Ct. 261, 166 L.Ed.2d 151 (2006), the *Rooker-Feldman* doctrine is not triggered simply because the complaint has some relationship to a state court judgment, but instead there is jurisdiction when the claim presents an independent federal claim that plaintiff was injured by filing a false affidavit in a state court proceeding. In *Todd* plaintiff was permitted to proceed with his action under the Fair Debt Collection Practices Act against the law firm. Another very recent example of an independent federal claim appears in *Powers v. Hamilton County Public Defender Com'n*, - F.3d -, 2007 WL 2428315 (6th Cir. 2007), a civil rights class action alleging that constitutional rights were violated by the public defender's policy or custom of failing to seek indigency hearings on behalf of criminal

1:06 CV 3107                                                    6

defendants facing jail time for unpaid fines. As the Sixth Circuit pointed out, "The *Rooker-Feldman* doctrine has no bearing on Powers' claims because he does not allege that he was deprived of his constitutional rights by the state-court judgment, but rather by the Public Defender's conduct in failing to ask for an indigency hearing as a prerequisite to his incarceration. Assertions of injury that do not implicate state-court judgments are beyond the purview of the *Rooker-Feldman* doctrine." *Powers* at *10.

At the evidentiary hearing Mr. Silver offered as an exhibit the state appellate court's decision in *Dandrew v. Silver* and the Common Pleas Court's docket (Ex. 3, 7, Exhibit List ECF #10). Further, Mr. Dandrew submitted his complaint and Mr. Silver's answer and counterclaim filed in the state court (Exhibits A and B) and the state appellate court decision with Common Pleas Court docket (Exhibits D & E). Mr. Silver had no objections to the authenticity of these documents.

Review of these exhibits reveals that the complaint filed in state court concerned the check written to Mr. Silver by Mr. Dandrew in 1996 which Mr. Dandrew claims was a loan (Exhibit A). Mr. Silver's answer and counterclaim addressed the $50,000.00 as a return of Mr. Silver's original $25,000.00 loan to Mr. Dandrew in connection with Mr. Dandrew's racing and restoring Mr. Silver's Porsche race car (Exhibit B). Mr. Silver's *pro se* counterclaim asserted breach of contract, breach of implied contract, breach of warranty and fraud in relation to the loan of his race car to Mr. Dandrew plus the $25,000.00 paid for the restoration and the spare parts. There are certainly differences between the allegations raised in the state counterclaim when compared to the complaint filed in federal court including differences in the computation of damages. Nonetheless, the basic

1:06 CV 3107                                7

gist of the underlying claims is the same. There is no attenuation between Mr. Silver's state counterclaim and his federal complaint.

      As for the outcome in Common Pleas Court, this was made very clear in the state appellate court's decision (Mr. Silver's own exhibit) which states:

> On February 8, 2005, the trial commenced before a visiting judge. Judgment was entered in favor of plaintiff-appellee, Dandrew, in the amount of $50,000, plus statutory interest. Judgment was also rendered in favor of Dandrew on the counterclaim. On March 9, 2005, a notice of appeal was filed by Silver.
> . . .
> Silver mistakenly asserted in his brief that the trial court shifted the burden of proof regarding the loan to him. As previously stated, Dandrew provided documentation and evidence supporting the existence of the loan and Silver's nonpayment. Silver, in turn, failed to provide any evidence to refute Dandrew's claims. The trial court stated the following:
>
>> I'll repeat myself. I said this to you before. Evidence is what we hear in the courtroom. It came from the witnesses, not from the lawyer asking questions or a party asking questions. Evidence only comes from witnesses. And I didn't hear any evidence, whatsoever. With respect to your counterclaim, there is a failure of evidence in that, as well. There is no evidence that there was any dispute about the condition of the car that was returned to you and no dispute and no evidence of any damage for which I would find Plaintiff liable after that. (footnote omitted).

(Journal Entry pg. 3, 7, plaintiff's Ex. 3).

      There is no independent federal claim and this case was brought to obtain a second appeal on Mr. Silver's loss on both the complaint and his counterclaim in the state courts. It is clear that Mr. Silver does not present an "independent federal claim" as is necessary and it is clear that he

1:06 CV 3107                                        8

brought this action in an effort to appeal not only the trial court's decision but the state appellate court's decision.  Mr. Silver's assertions of injury directly implicate the state court judgment and are an obvious attempt to relitigate the matters over which judgment had been entered.

This does not end in analysis of the *Rooker-Feldman* doctrine, however.  Mr. Silver alleged in his federal complaint that the state court did not consider his evidence nor adjust for offsets and ignore the entire race car agreement (Complaint, ¶32).  He further claims that the behavior of the trial and appellate courts was baffling to all persons and he refers vaguely to a case where Mr. Dandrew's law firm lost a lawsuit due to the lack of ethics (Complaint, ¶35).

The arguments in the complaint and brief in opposition rely on the exception to the *Rooker-Feldman* doctrine carved out in *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc.*, that "a federal court 'may entertain the collateral attack on the state court judgment which is alleged to have been procured through fraud, deception, accident or mistake . . .':" *Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986), quoting *Resolute Ins. Co. v. State of North Carolina*, 397 F.2d 586, 589 (4th Cir. 1968); and see *Catz v. Chalker*, 142 F.3d 279, 294 (6th Cir. 1998) (quoting *Sun Valley Foods Co.* with approval).

The undersigned questions the continued validity of this exception for multiple reasons.  In *Sun Valley Foods Co.,* the Sixth Circuit borrowed from exception to res judicata's preclusive effect and applied that to the inextricable intertwinement approach to the *Rooker-Feldman* doctrine. *Resolute Ins. Co.* cited in *Sun Valley Foods Co.*, was a decision involving the application of *res*

1:06 CV 3107                                                  9

*judicata*, not the *Rooker-Feldman* doctrine.  See *Resolute Ins. Co.*, 397 F.2d at 589.  In *Lance v. Dennis*, 546 U.S. 459, 466, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006), the Supreme Court admonished the lower courts against borrowing from preclusion rules.  *Sun Valley Foods Co.* was also recently questioned in the 10th Circuit.  See *West v. Evergreen Highlands Assoc.*, 213 Fed. Appx. 670, 674 (10th Cir. 2007). The 10th Circuit believed that *Sun Valley Foods Co.*, was a misconstruction of *Rooker-Feldman* that permitted federal reconsideration and nullification of state judgments on grounds that could have been pursued in state court. Finally, this exception is now superfluous in light of the currently mandated approach from the standpoint of whether there is an independent federal claim.

    In any event, Mr. Silver has not made a showing under this former exception to inextricable intertwinement approach to the *Rooker-Feldman* doctrine.  As the 10th Circuit explained in *West,* the state court loser's contention that the decision was "grossly erroneous" provided "no basis" for collateral attack in federal court.  *West*, 213 Fed. Appx. at 674; *Resolute Ins. Co.*, 397 F.2d at 589. The principle of *Resolute* turns on the improper procurement of the judgment.  *Id.*  That is the district court must have been deceived into issuing the wrong decree.  See *Sun Valley Foods Co.*, 801 F.2d at 189.  Mr. Silver is apparently attempting to show deception by vague references to unethical activities of his opponent's legal representation.  However Mr. Silver must show that such "deceit" occurred in his litigation.  The state appellate court quoting from the trial court relayed that Mr. Silver had simply failed to put on such a case lending the race car.  Mr. Silver  submitted

1:06 CV 3107                                                                 10

excerpts from the trial court transcript to show otherwise, but he has shown deceit. [1] In his post-hearing motion (ECF # 7), he speculates that a previously undisclosed real estate document produced at the trial was procured by fraudulent means. Mr. Silver offers only this bare assertion, though, without any support. He also claims that the state court judges were corrupt and were, according to Mr. Dandrew, the best that money can buy. This claims is again a bare disparaging remark. The evidence produced at the evidentiary hearing, at best, only establishes a failure by Mr. Silver to demonstrate his counterclaim in the state trial court by a preponderance of the evidence. The excerpted portions of the state trial court record do demonstrate strong counter arguments to Mr. Silvers' claims. Even assuming this exception from *Sun Valley Foods Co.* to the *Rooker-Feldman* doctrine continues to be viable, Mr. Silver has not demonstrated that this exception for fraud or deceit applies to the underlying state litigation.

*Res Judicata*:

Under 28 U.S.C. §1738, "federal courts [are] to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerge would do so." *Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983); *and see Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *and see McAdoo v. Dallas Corp*, 932 F.2d 522, 524 (6th Cir. 1991). The federal courts do not apply the federal rule of *res judicata* or collateral

---

[1] Mr. Silver requests for the admission of his excerpts from the trial which include Mr. Dandrew's testimony that there had been an unexecuted lease between Mr. Silver and himself (Tr. 154), and that Mr. Dandrew returned the race car to Mr. Silver, "in considerably better condition than we received it, and it went directly from ANDIAL [vehicle restoration] to you [Mr. Silver]. After you received the car, that damage occurred." (Tr. 226). See Ex.10 in Mr. Silver's exhibit book. These excerpts from the testimony show at best only weak support for Mr. Silver's counterclaim, and do not demonstrate fraud or deceit in procuring judgment.

1:06 CV 3107  11

estoppel to give greater preclusive effect to a state court judgment than accorded by the law of the state. *McAdoo*, 932 F.2d at 524; *FDIC v. Eckhardt*, 691 F.2d 245 (6th Cir. 1992). *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997). Under Ohio law, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St. 379, 653 N.E.2d 226, syllabus ¶1 (1995).

There is no question that Mr. Silver's complaint against Mr. Dandrew arises out of the transactions or occurrences that were the subject matter of the previous action and thus this litigation is barred under Ohio's doctrine of *res judicata* and 28 U.S.C. §1738.

However, the Supreme Court has held that as a matter of federal law, "*res judicata* principles cannot apply 'where the party against whom an earlier decision is asserted and not have the full and fair opportunity to litigate the claim or issue decided by the first court.'" *Abbott v. Michigan*, 474 F.3d 324, 331 (6th Cir. 2007), quoting *Allen v. McCurry*, 449 U.S. 90, 95, 105 S.Ct. 411, 66 L.Ed.2d 308 (1980). "As a constitutional minimum, the state-court proceedings must 'satisfy the applicable requirements of the Due Process Clause' in order for their decisions to warrant preclusive effect." *Abbott*, 474 F.3d at 331 quoting *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). As addressed above in Mr. Silver's attempt to carve out an exception to the *Rooker-Feldman* doctrine, there is nothing before this court to indicate that Mr. Silver did not have a full and fair opportunity to litigate his counterclaim and Mr. Dandrew's claim in the state courts. Accordingly, state rules of *res judicata* apply to bar this claim.

1:06 CV 3107                                                    12

## *CONCLUSION*

For the foregoing reasons it is recommended that Mr. Dandrew's motion to dismiss (ECF #5) be granted under the *Rooker-Feldman* doctrine and, if necessary, dismissal may rest on the preclusive effect given against reajudication of claims under Ohio's rules of issue preclusion.


                                                        s/James S. Gallas
                                                      United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).