UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD M. SILVER, | ) | CASE NO.  1:06CV3107 |
| | ) | |
| **Plaintiff,** | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | |
| BRUCE DANDREW, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| **Defendant.** | ) | |
| | ) | |

This matter is before the Court upon Defendant's Motion to Dismiss, pursuant to FED. R. CIV. P. 12(b).  (Dkt. # 5).  On October 4, 2007, Magistrate Judge James S. Gallas issued a Report and Recommendation recommending that this Court GRANT Defendant's Motion to Dismiss.  (Dkt. # 15).  For the following reasons, this Court ADOPTS IN PART the Magistrate's Report and Recommendation.

## I. BACKGROUND

This action arises out of a dispute between Plaintiff and Defendant regarding the loan of Plaintiff's racecar and related equipment to Defendant, and the exchange of various sums of money between the parties.  (Dkt. # 1).  According to the Complaint, *pro se* Plaintiff Richard M. Silver ("Silver") agreed to loan his restored Porsche racecar and $200,000.00 in related equipment to Defendant Bruce Dandrew ("Dandrew") for use by Dandrew in six racing club events.  (Dkt. # 1 at ¶¶ 7-8, 11).  Dandrew, in exchange, was to have the car restored after the six events to its pre-loan condition by an international car restoration company, thereby increasing the value of the car.  (Dkt # 1 at ¶¶ 8-10).  In

1

addition to loaning the car, Silver also gave Dandrew $25,000.00 "towards the final restoration as [Silver's] contribution for the benefit of the name and professionalism of [the international restoration company], that would add substantial value to the car after the restoration and towards its sale price." (Dkt. # 1 at ¶ 10).

In preparation for the racing club events, Dandrew allegedly had several modifications made to the car. (Dkt. # 1 at ¶ 13). Dandrew also apparently crashed the car during one of the racing events, damaging the car. (Dkt. # 1 at ¶ 15). Silver alleges that, following the final racing event, Dandrew returned the car to a Cleveland area Porsche dealer in a damaged condition. (Dkt. # 1 at ¶ 18). Silver had the car restored without the benefit of the spare parts he had loaned to Dandrew. (Dkt. # 1 at ¶ 18). In addition, the $25,000.00 Silver had given Dandrew for restoration was not returned. (Dkt. # 1 at ¶ 18). After repairs, Silver sold the racecar for $150,000.00, which he alleges was substantially below the market value of the car. (Dkt. # 1 at ¶ 19).

On December 7, 1996, after the sale of the car, Dandrew sent Silver a check for $50,000.00. (Dkt. # 1 at ¶ 20). Silver alleges that this payment was "to offset the loss [from the below market sale of the car] and towards the repairs." (Dkt. # 1 at ¶ 20). On March 27, 2003, Dandrew sued Silver in state court to recover the $50,000.00, alleging that the money was a loan. (Dkt. # 1 at ¶ 20-21; Dkt. # 11, Ex. 2). Silver filed a counterclaim for $225,000.00 against Dandrew, seeking losses incurred as a result of Dandrew's damaging the racecar. (Dkt. # 11, Ex. 3).

At trial, the state court ruled in favor of Dandrew and ordered Silver to repay the $50,000.00 plus interest. (Dkt. # 1 at ¶ 21; Dkt. # 11, Ex. 4). The court also entered

judgment in favor of Dandrew on Silver's counterclaim.  (Dkt. # 11, Ex. 4).  On appeal, the Eighth District Court of Appeals affirmed the trial court's decision.  (Dkt. # 11, Ex. 4).

Silver filed the Complaint in the instant federal action on December 29, 2006. (Dkt. # 1).  This Court assigned the case to Magistrate Judge James S. Gallas for general pretrial supervision, including all motions.  (Dkt. # 4).  Dandrew filed the instant Motion to Dismiss, arguing that Silver's claims were barred by the *Rooker-Feldman* doctrine and, in the alternative, by the doctrine of *res judicata*.  (Dkt. # 5).  Silver filed a Response to Dandrew's Motion to Dismiss, (Dkt. # 6), and Dandrew filed a Reply.  (Dkt. # 7). Magistrate Judge Gallas issued a Report and Recommendation on October 4, 2007, recommending that this Court GRANT Dandrew's Motion to Dismiss based on the *Rooker-Feldman* doctrine or, in the alternative, on the doctrine of *res judicata*.  (Dkt. # 15).  Silver timely filed objections to the Magistrate's Report and Recommendation. (Dkt. # 16).

## II. STANDARD OF REVIEW

A motion to dismiss based on the *Rooker-Feldman* doctrine is properly brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, which provides for dismissal where a district court lacks subject matter jurisdiction.  McCormick v. Braverman, 451 F.3d 382, 389 (6th Cir. 2006); FED. R. CIV. P.(b)(1).  The Sixth Circuit has held that "[a] Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be construed as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the

3

evidence and the plaintiff bears the burden of proving that jurisdiction exists." DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004). Where a motion attacks the factual basis for jurisdiction, as the instant motion does, "the court is empowered to resolve factual disputes." RMI Titanium Co. v. Westinghouse Electric Corp., 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting Rogers v. Stratton Industries, Inc., 798 F.2d 913, 915 (6th Cir. 1986)). As such, the court is permitted to "weigh the evidence concerning jurisdiction…and decide the jurisdictional facts." RMI Titanium, 78 F.3d at 1135.

## III. LAW AND ANALYSIS

### A.  The *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine bars parties that have lost in state court from filing suit in federal district courts for the purpose of obtaining review of the adverse state-court judgments." Powers v. Hamilton County Public Defender Commission, 501 F.3d 592, 606 (6th Cir. 2007). The doctrine derives from two Supreme Court cases in which plaintiffs brought suit in federal district courts seeking to have a final state court judgment declared null and void. Rooker v. Fidelity Trust Co., 263 U.S. 413, 414 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). In each case, the Court held that federal review of a final state court judgment could be obtained only in the Supreme Court of the United States, and that federal district courts were without jurisdiction to hear such cases. Rooker, 263 U.S. at 416; Feldman, 460 U.S. at 475.

The Supreme Court has explicitly limited the reach of the *Rooker-Feldman* doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries, 544 U.S. 280, 284 (2005). The Sixth Circuit has similarly noted that "[t]he doctrine applies only when a plaintiff complains of injury from the state court judgment itself." Abbott v. Michigan, 474 F.3d 324, 328 (6th Cir. 2007) (internal quotation and citation omitted). "Assertions of injury that do not implicate state-court judgments are beyond the purview of the *Rooker-Feldman* doctrine." Powers, 501 F.3d at 606.

To determine the applicability of the *Rooker-Feldman* doctrine, a district court must identify the source of the injury alleged by the plaintiff in the federal complaint. "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim," and *Rooker-Feldman* does not apply. McCormick, 451 F.3d at 393. Similarly, the *Rooker-Feldman* doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." Exxon Mobil, 544 U.S. at 293. In such cases, the district court has jurisdiction to hear the claim, and principles of preclusion, rather than *Rooker-Feldman*, are applicable. Id.

Dandrew argues that Silver's federal claims are barred by the *Rooker-Feldman* doctrine because this Court "must decline review of the underlying state court judgment awarded in favor of Dandrew against Silver in the amount of $50,000.00 because Plaintiff's present claims require this Honorable Court to review the state court decision

5

and conclude that it was wrongly applied to Plaintiff." (Dkt. # 5 at 9). This argument, however, ignores the Sixth Circuit's guidance in McCormick. Silver's federal Complaint contains six counts. (Dkt. # 1). In only one of these, the count alleging "breach of implied contract," does Silver allege an injury that has as its source the state court decision awarding Dandrew $50,000.00 plus interest and fees. (Dkt. # 1 at ¶¶ 31-33). In that count, captioned "SECOND CAUSE OF ACTION," Silver specifically disputes the trial court's finding that the $50,000.00 was a loan from Dandrew to Silver, and the court's ruling in favor of Dandrew for "the loan amount plus 10% interest and fees," which correlates exactly to the portion of requested relief for "[t]he refund of the $50,000, plus interest paid and its fees." (Dkt. # 1 at ¶ 32, p. 8). Silver's other counts present issues that were litigated in state court, but none claim an injury having as its source the state court judgment. Therefore, only Silver's count for "breach of implied contract," captioned "SECOND CAUSE OF ACTION," is barred by the *Rooker-Feldman* doctrine.

### B. *Res Judicata*

"The doctrine of *res judicata*… refers to the preclusive effect of a prior judgment upon a subsequent proceeding. In cases where a prior judgment was rendered in state court, federal courts are obligated to give the same preclusive effect to the state court judgment as that judgment would receive in the rendering state." Dietrich v. Stephens, 2007 WL 3101315, *2 (6th Cir. 2007) (citing 28 U.S.C. § 1738). Thus, in the instant case, this Court is bound to give the decision of the state court the same preclusive effect it would have under Ohio law. Migra v. Warren City School District Board of Education,

465 U.S. 75, 81 (1984); see also Hapgood v. City of Warren, 127 F.3d 490, 493 (6th Cir. 1997).

The Supreme Court of Ohio has held that "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Township, 653 N.E. 2d 226, 229 (Ohio 1995). For purposes of *res judicata*, a claim arises out of the same transaction or occurrence as a previous action if the claim stems from "a common nucleus of operative facts." Id. (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. B (1982)). Thus, "[t]he doctrine of *res judicata* not only applies to those claims and defenses actually litigated in the first dispute, but is conclusive as to any claim that may have been properly adjudicated." Frank v. Manbevers, 2007 WL 2965611, *3 (Ohio App. 5 Dist. 2007). Nevertheless, a party against whom an earlier decision is asserted must have had "a full and fair opportunity to litigate the claim or issue decided by the first court." Abbott, 474 U.S. at 331 (quoting Allen v. McCurry, 449 U.S. 90, 95 (1980)). Where a party was not given "notice and an opportunity to respond" to the claims in state court, due process has not been satisfied, and the state court decision will not be given preclusive effect. Abbott, 474 U.S. at 331 (citing Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546 (1985)).

In the instant case, Dandrew argues that the claims stated in Silver's federal complaint are barred by the doctrine of *res judicata* because they "were raised, or could have been raised, in the state case." (Dkt. # 5 at 11). The Court agrees. The record demonstrates that the claims alleged by Silver in his federal Complaint arise out of the

7

same transaction or occurrence that formed the basis of the state court action between the parties.  Furthermore, nothing in the record indicates that Silver did not have "a full and fair opportunity to litigate" these claims and issues in the state court proceedings.  In fact, the claims contained in Counts One, Three, Four, Five, and Six of Silver's federal Complaint were raised in one form or another in the state court proceedings, either as part of Dandrew's complaint or Silver's answer and counterclaim.  (See Dkt. # 1; Dkt. # 11, Ex. 2, 3). Therefore, these claims are barred by the doctrine of *res judicata*.

## IV. CONCLUSION

For the foregoing reasons, the Magistrate's Report and Recommendation is ADOPTED IN PART.  Dandrew's Motion to Dismiss is **GRANTED**.  Silver's objections to the Magistrate's Report and Recommendation are OVERRULED.

**IT IS SO ORDERED.**

<u>**/s/ Peter C. Economus – November 28, 2007**</u>
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**